No. 17-71692

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re: UNITED STATES OF AMERICA.

UNITED STATES OF AMERICA, et al.
Petitioners,
v.

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF OREGON
Respondent,
and

KELSEY CASCADIA ROSE JULIANA, *et al.,*
Real Parties in Interest.

On Petition For A Writ Of Mandamus In
Case No. 6:15-cv-01517-TC-AA (D. Or.)

**PETITIONERS' REPLY IN SUPPORT OF REQUEST FOR
STAY OF PROCEEDINGS PENDING CONSIDERATION
OF PETITION FOR WRIT OF MANDAMUS**

JEFFREY H. WOOD
Acting Assistant Attorney General

ERIC GRANT
Deputy Assistant Attorney General

ANDREW C. MERGEN
DAVID C. SHILTON
Environment & Natural Res. Div.
U.S. Department of Justice
P.O. Box 7415
Washington, DC 20044
(202) 514-5580

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .......................................................................................... 1

ARGUMENT ................................................................................................ 1

      A.     Defendants have a strong likelihood of success ............................... 3

           1.     The district court's errors are clear and serious. ................... 3

           2.     Mandamus is needed to confine the district court to the lawful exercise of its jurisdiction. ............................................ 4

           3.     Defendants have no other means to obtain needed relief. ... 6

      B.     Proceedings in district court are causing irreparable harm to defendants, and a stay is in the public interest. ............................... 9

      C.     A stay will not injure plaintiffs. ....................................................... 11

CONCLUSION ............................................................................................ 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**

*Am. Elec. Power Co. v. Connecticut,*
    564 U.S. 410 (2011) ...................................................................................5

*Cheney v. U.S. Dist. Ct.,*
    542 U.S. 367 (2004) ........................................................................... 5-8, 11

*Credit Suisse v. U.S. Dist. Ct.,*
    130 F.3d 1342 (9th Cir. 1997) ...................................................................9

*Ex parte Peru,*
    318 U.S. 578 (1943) ...................................................................................6

*In re Cheney,*
    406 F.3d 723 (D.C. Cir. 2005) ...................................................................8

*Leiva-Perez v. Holder,*
    640 F.3d 962 (9th Cir. 2011) .....................................................................1

*Milwaukee v. Illinois,*
    451 U.S. 304 (1981) ...................................................................................5

*Native Vill. of Kivalina v. ExxonMobil Corp.,*
    696 F.3d 849 (9th Cir. 2012) .....................................................................5

*United States v. Nixon,*
    418 U.S. 683 (1974) .................................................................................11

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ...................................................................................4

*Ziglar v. Abbasi,*
    slip op. (U.S. June 19, 2017) ...................................................................11

**RULES AND REGULATIONS:**

Fed. R. App. P. 27 ...................................................................................................1

Circuit Rule 21-4....................................................................................................1

## INTRODUCTION

On June 9, 2017, defendants United States, et al., filed their Petition for Writ of Mandamus and Request for Stay of Proceedings. Dkt. 1-1. On June 19, 2017, plaintiffs Kelsey Juliana, et al., submitted their "Response Brief of Real Parties in Interest to Request for Stay of Proceedings in District Court," which was docketed as a "response to motion (motion for writ of mandamus)." Dkt. 4. As this Court has not requested an answer to the petition itself, *cf.* Circuit Rule 21-4 ("No answer to such a petition may be filed unless ordered by the Court"), we presume that plaintiffs' filing is a response only to the stay request pursuant to FRAP 27(a)(3). On that presumption, we file this reply pursuant to FRAP 27(a)(4).

## ARGUMENT

A stay requires a showing that "irreparable harm is probable," and either "(a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011). Plaintiffs contend that defendants have not met this standard because this is an ordinary civil case seeking to enforce "well-established" legal principles, Response at 4, 12, and because the massive and intrusive discovery they have propounded is merely required to develop "the record necessary for considered appellate review" of these allegedly well-established claims, *id.* at 2. In fact, this is no ordinary case seeking appropriate federal court remedies based on established legal

principles.  To the contrary, in this unprecedented and improper case, plaintiffs seek

relief that no federal court can rightfully give:

- a declaration that the federal government has violated a fundamental due process right to a particular climate system;

- an order that defendants "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric CO2 so as to stabilize the climate system"; and

- the district court's retention of jurisdiction "to monitor and enforce Defendants' compliance with the national remedial plan."

Dkt. 7 at 94.

Stemming from this unprecedented request for relief are plaintiffs' ongoing and

massive discovery requests that will tie up the resources of multiple Cabinet agencies

— not to mention the Executive Office of the President and even the President

himself — in a search for documents going back more than six decades.  Petition at

6-7.  Even the magistrate judge who is sympathetic to plaintiffs' case has recognized

that these requests are likely to prove "very tedious, very expensive, and very time

consuming."  Dkt. 179 at 12:10-11,  Then there are the numerous expert reports

that plaintiffs intend to present — thirteen and counting, *see* Dkt. 178 at 10 (11

original); Dkt. 179 at 18:5-8 (2-4 more) — to which defendants must respond by

engaging and preparing experts.  All of this is in preparation for a lengthy trial in "late

2017," Dkt. 178 at 11, at which the district court expects to "define the contours of

plaintiffs' constitutional rights to life and a habitable atmosphere and climate, declare

the levels of atmospheric C02 which will violate their rights, * * * and direct the

2

federal defendants to prepare and implement a national plan which would stabilize the climate system." Dkt. 146 at 8. A stay while this Court considers defendants' petition for mandamus is clearly warranted in these extraordinary circumstances.

### A. Defendants have a strong likelihood of success.

#### 1. The district court's errors are clear and serious.

As the petition demonstrates, the district court committed numerous errors in denying the motions to dismiss. Plaintiffs cannot establish standing based on alleged injuries that: (1) are widely shared by every member of society; (2) cannot plausibly be traced to particular actions of the federal government; and (3) cannot be redressed by an order within the proper authority of a federal court. On the merits, Plaintiffs have adduced no authority whatsoever for the existence of an "unenumerated fundamental right" to a global atmosphere possessing $CO_2$ concentrations that a district court determines are necessary to protect plaintiffs from asserted injury. Nor have they adduced any support for a "public trust" right to a particular climate system that would be enforceable against the federal government. Rather than defend the district court's unprecedented holdings with citation to relevant precedent, plaintiffs simply rely on the opinions of the district court and magistrate judge themselves to show that there has been no "clear error." Response at 7-8.

But as we pointed out (Petition at 24), neither plaintiffs nor the district court cited any decision from a United States court demonstrating that a fundamental constitutional right to a stable climate system is "deeply rooted in our legal tradition,"

3

as required by Supreme Court precedent. *See Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). The closest plaintiffs and the district court come is an opinion from a court in the Philippines. Dkt. 83 at 50. Far from grounding its ruling on "well-established legal principles," Response at 4, 12, the district court assumed that the asserted magnitude of the environmental issues in this case justified declaring a new fundamental right to a climate system *despite* the absolute lack of precedent. This was clear error.

### 2. Mandamus is needed to confine the district court to the lawful exercise of its jurisdiction.

Plaintiffs try to cloak the radical nature of their claims and the district court's actions by denying that they want the district court to "'determine national policy regarding energy development, use of public lands, and environmental protection.'" Instead, say plaintiffs, they want "only an order directing Defendants to desist from and remedy the violations of their rights under the Constitution and Public Trust Doctrine." Response at 14, quoting Pet. at 31. This is disingenuous. National policy on these subjects is expressed in numerous statutes, yet plaintiffs and the district court have made clear their belief that statutes do not constrain the judicial power to construct and supervise a remedy to vindicate the alleged right to a particular "climate system." *See* Dkt. 83 at 51-52 (district court's findings that citation to statutory and common-law limitations "misses the point" that plaintiffs' claims are of a "different order" because defendants' actions and inaction allegedly "threaten plaintiffs'

fundamental constitutional rights to life and liberty"). This view cannot be reconciled with the repeated teaching of the Supreme Court and this Court that when Congress addresses a question via statute, "the need for such an unusual exercise of law-making by federal courts disappears." *Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981), *quoted in Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 423 (2011), *and Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 858 (9th Cir. 2012).

It is not merely statutes defining national policy on energy development and emissions regulation that plaintiffs and the district court have tossed overboard. Doctrines that limit the power of reviewing courts to second-guess the discretionary determinations of expert federal agencies under the Administrative Procedure Act have likewise been discarded. The district court has made clear its belief that, "[f]ederal courts too often have been cautious and overly deferential in the arena of environmental law," and that it will not be so constrained. Dkt. 83 at 52. The district court's vision of this case as "of a different order" beyond normal statutory and jurisprudential limits poses severe threats to the constitutional separation of powers and plainly warrants mandamus relief. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004) ("Accepted mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities").

### 3.   Defendants have no other means to obtain needed relief.

Plaintiffs contend (Response at 9-12) that mandamus is unwarranted because the defendants allegedly have other means to prevent harm to Executive Branch functions, such as by invoking privilege. This argument fails to recognize the damage to the Executive Branch inflicted by having to respond to massive and intrusive discovery, as well as the damage to the separation of powers inflicted by adjudication of this case at all.

The Supreme Court's decision in *Cheney* is instructive. There, the Court rejected a similar argument that mandamus was unavailable where the federal government had not specifically invoked a privilege against discovery that threatens to intrude on important Executive Branch functions. Justice Kennedy characterized the "central issue in the case" as "whether the Court of Appeals was correct to conclude it 'ha[d] no authority to exercise the extraordinary remedy of mandamus,' * * * on the ground that the Government could protect its rights by asserting executive privilege in the District Court." 542 U.S. at 380 (quoting court of appeals). With regard to the showings necessary for mandamus, the Court made clear that "[t]hese hurdles, however demanding, are not insuperable," and that "[t]his Court has issued the writ to restrain a lower court when its actions would threaten the separation of powers by 'embarrass[ing] the executive arm of the Government.'" *Id.* at 381 (quoting *Ex parte Peru*, 318 U.S. 578, 588 (1943)).

6

The discovery requests here are far broader than those in *Cheney,* which were grounded in a particular statute (the Federal Advisory Committee Act) and sought information on the actions of a single task force. Here, the scope of discovery is commensurate with plaintiffs' extraordinary legal theory that the Constitution and the common-law public trust doctrine provide a legal basis to probe the "aggregate actions" of the entire federal government respecting energy and environmental policy over the past 60 years. *See* Petition at 6-7. Particularly where, as here, the legal foundation for such extraordinarily broad and intrusive discovery is non-existent, "mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." *Cheney,* 542 U.S. at 382. Responding to discovery that delves into every aspect of the federal government's decision-making relating to energy development, transportation, and consumption (including sensitive matters within the Office of the President) interferes with the discharge of the Executive Branch's constitutional responsibilities whether or not particular matters are privileged. Here, as in *Cheney*, "[t]hese facts and allegations remove this case from the category of ordinary discovery orders where interlocutory appellate review is unavailable, through mandamus or otherwise." *Id.* at 381.

Equally inapt is plaintiffs' contention that "the proper course for seeking a writ of mandamus premised on discovery burdens is to challenge the discovery order under which the alleged burdens arise, not the very existence of the case under which

7

discovery issues." Response at 9. First, plaintiffs inaccurately portray *Cheney* as having limited relief to "a writ of mandamus . . . to vacate the discovery orders . . . ." *Id.*, quoting from 542 U.S. at 376. Plaintiffs elided a vital part of the quoted sentence, which says that the Government "sought a writ of mandamus in the Court of Appeals to vacate the discovery orders, to direct the District Court to rule on the basis of the administrative record, and to *dismiss the Vice President from the suit.*" *Id.* (emphasis added). Indeed, after the Supreme Court clarified that mandamus was available to support interlocutory review, the D.C. Circuit on remand went en banc to address the key substantive issues in that case — which were far more debatable than the alleged constitutional right to certain levels of atmospheric $CO_2$ — and ordered *dismissal of the entire lawsuit. In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005). *Cheney* confirms that writs of mandamus need not be limited to discovery orders. In short, it is clear that "mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." 542 U.S. at 382. Here, only dismissal will achieve that result.

The request for mandamus has a much broader focus than discovery burdens alone, although those burdens are significant and demonstrate both the impropriety of the case and the need for a stay. The petition seeks a writ dismissing an action with multiple jurisdictional and other flaws whose pendency threatens irreparable harm to the ability of the Executive Branch to carry out constitutionally-assigned functions. A writ of mandamus directing dismissal is available in these circumstances, as it was in

8

*Credit Suisse v. U.S Dist. Ct.*, 130 F.3d 1342 (9th Cir. 1997), which granted a writ directing dismissal of a lawsuit that conflicted with the Act of State Doctrine and threatened harm not reparable on appeal).

In sum, the defendants have no means besides mandamus to avoid the delay and unwarranted interference with the Executive Branch's ability to discharge its constitutional responsibilities that inevitably results from district court proceedings under a legal theory that places no limits on the plaintiffs' ability to delve into federal government decision-making over many decades. Defendants accordingly have a strong likelihood of success in obtaining mandamus.

### B. Proceedings in district court are causing irreparable harm to defendants, and a stay is in the public interest.

As set out in the petition, plaintiffs defined the massive scope of desired discovery when they demanded that all defendants (including the President) preserve, for a period going back at least six decades,

- "[a]ll Documents related to climate change";

- "[a]ll Documents related to national energy policies or systems";

- "[a]ll Documents related to federal public lands, navigable waters, territorial waters, navigable air space or atmosphere"; and

- "[a]ll Documents related to greenhouse gas emissions or carbon sequestration as those terms apply to agriculture, forestry, or oceans."

Dkt. 121-1 at 5-6. Their response does not suggest any principled limitations on this extraordinarily broad discovery, but merely notes that plaintiffs have on occasion agreed to trim some specific discovery requests. Response at 10.

Plaintiffs recently reaffirmed that:

> The discovery phase of this case will develop a factual record, in part, establishing with scientific and factual certainty: (1) the causal mechanisms underlying climate change; (2) the global and national injuries and unique personal injuries to Plaintiffs resulting from climate change; (3) the degree to which Federal Defendants' actions have caused those impacts; (4) the factual context within which Federal Defendants have taken, authorized, and permitted the actions resulting in those impacts; and (5) the degree to which Federal Defendants can mitigate and reverse those impacts through exercise of their authority over our nation's energy system.

Dkt. 159 at 6. The district court has made clear that the parties will present expert testimony on these broad issues at a trial. Dkt. 159 at 7:12-24. Plaintiffs have announced their intent to depose the Secretaries of State, Energy, and Interior, as well as the EPA Administrator and others. The significant and unprecedented effort required to prepare for a trial on public policy issues not within the province of the judiciary irreparably harms defendants by seriously interfering with their ability to carry out their statutory responsibilities.

Plaintiffs contend that a stay would contravene the public interest, because "[w]hen the political branches fail to protect the constitutional rights of citizens * * * the separation of powers doctrine directs the judiciary to fulfill its duty to serve as a check and balance on the other branches of government to safeguard constitutional

liberty." Response at 20. This argument fails because there is no constitutional right to a "climate system." If plaintiffs believe that the political branches have failed to pursue plaintiffs' preferred climate policies, they must address those concerns to the political branches themselves, not to the courts.

The Supreme Court in *Cheney* emphasized that

> the public interest requires that a coequal branch of Government "afford Presidential confidentiality the greatest protection consistent with the fair administration of justice," and give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties.

542 U.S. at 382, citation omitted, quoting *United States v. Nixon*, 418 U.S. 683, 715 (1974). The Court reiterated this very point last week in *Ziglar v. Abbasi*, slip op. at 18 (U.S. June 19, 2017). The public interest in protecting a coequal branch from this extraordinarily burdensome and improper litigation strongly supports a stay.

### C.     A stay will not injure plaintiffs.

Plaintiffs have advanced no credible reason why a stay of proceedings long enough to permit resolution of the petition would cause them injury. They claim to suffer harm from sea level rise and other phenomena related to $CO_2$ concentrations in the atmosphere, resulting from the cumulative effects of world-wide $CO_2$ emissions *over many decades*. Response at 17-18. They cannot credibly claim that a short delay in this lawsuit will make any difference in this worldwide phenomenon.

11

## CONCLUSION

The Court should grant a stay of proceedings in the district court pending

resolution of defendants' petition for mandamus.

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General

ERIC GRANT
Deputy Assistant Attorney General

s/ David C. Shilton
ANDREW C. MERGEN
DAVID C. SHILTON
  Attorneys, Appellate Section
  Environment & Natural Resources Div.
  U.S. Department of Justice
  P.O. Box 7415
  Washington, DC  20044
  (202) 514-5580
  david.shilton@usdoj.gov

12

## CERTIFICATE OF COMPLIANCE

This reply complies with the word count limitation of 9th Cir. Rules 27-1(1)(d) and 32-3(2) because it contains 2,796 words, as counted by the word-processing software utilized.  It also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because it is in 14-point Garamond font.

s/ David C. Shilton
DAVID C. SHILTON

## CERTIFICATE OF SERVICE

I certify that on this 26th day of June 2017, I electronically filed the foregoing document with the Ninth Circuit using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

   s/ David C. Shilton
DAVID C. SHILTON